IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | | |
|---|---|---|
| ANGELA STUDDARD, individually and as lawful wife, next of kin, administrator ad litem, and personal representative for EDMOND STUDDARD, Deceased, and Estate of Edmond Studdard, | ) ) ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. 2:17-cv-02517 |
| SHELBY COUNTY, TENNESSEE; SHERIFF WILLIAM OLDHAM, in his capacity as Sheriff of Shelby County, Tennessee; SHELBY COUNTY SHERIFF'S OFFICE; ERIN J. SHEPHERD, individually and as employee or agent of Shelby County, Tennessee; and TERRY I. REED, individually and as employee or agent of Shelby County, Tennessee, | ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

**DEFENDANT SHELBY COUNTY'S MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

Defendant Shelby County, Tennessee hereby moves the Court to enter summary judgment in its favor. In support of its Motion, Shelby County states as follows:

**INTRODUCTION**

Summary judgment should be granted in Shelby County's favor because, in the absence of an underlying constitutional violation, a municipality cannot be held liable under 42 U.S.C. § 1983. And even if a constitutional violation had occurred in this case (it did not), Plaintiff Angela Studdard can submit no evidence showing that such a violation was the result of a policy,

practice, custom, or failure to train sufficient to establish liability on the part of Shelby County.

**RELEVANT FACTS AND PROCEDURAL HISTORY**

On July 7, 2016, Shelby County Sheriff's Deputies Erin Shepherd and Terry Reed came face to face with Edmond Studdard, who at the time was covered in blood and waiving around and pointing at them a utility knife. He refused to drop the weapon and yelled at them to shoot him. Despite the Deputies' instructions to him to drop the knife and requests that he comply and let them help him, Edmond Studdard moved closer to them until they had no reasonable alternative but to fire their weapons. Deputies Reed and Shepherd fired a total of five times, striking Studdard twice. As soon as he fell to the ground, they rushed to him to secure the knife and render medical aid. Mr. Studdard did not die on the scene. Tragically, however, he died two months later at the hospital. Nonetheless, the facts in the record make it clear that Studdard and Reed acted reasonably.

The details of the shooting that day are explained more fully in Shepherd and Reed's Memorandum in Support of their Motion for Summary Judgment, which is being filed concurrently with Shelby County's Motion and this Memorandum. Those facts are not reiterated here, but are incorporated as if stated fully herein. In addition, Shelby County provides the facts below that are relevant to Plaintiff's municipal liability claims.

1. **Shelby County Sheriff's Office Policies**

The Shelby County Sheriff's Office maintains up-to-date polices on use of firearms, deadly force, and on dealing with suspects suffering from mental illness. These polices are attached as Exhibit A to Defendants' Joint Statement of Undisputed Material Facts.[1]

---

[1] The Deposition Transcripts and Exhibits cited in this Memorandum are taken from Defendants' Joint Statement of Undisputed Material Facts, which was filed as an attachment to Shepherd and Reed's Motion for Summary Judgment. They are labeled by letter based on the order in which they appear in the Statement, unless they are sub-exhibits (e.g., exhibits contained within depositions or other exhibits), and are incorporated herein.

## 2. Shelby County Sheriff's Office Training

The SCSO also provides training to all of its deputies regarding firearms, use of force, and handling mentally ill suspects. Deputy cadets receive training at the academy regarding mentally ill or unstable suspects. (Shepherd Dep. 57). The training academy lasts six and a half months. (Shepherd Dep. 31).

Some deputies, including Deputies Shepherd and Reed, go on after the academy to receive even more training in the handling of mentally ill suspects. Critical Incident Team (or CIT) training is a 40-hour class provided at the Memphis Police Department training academy. (Pair Dep. 58; Reed Dep. 26; Shepherd Dep. 68; SCSO Policies, Ex. A). CIT training includes advanced training on how to deal with suspects suffering from mental illness or disability. (Pair Dep. 59). When possible, CIT officers go to scenes at which a deputy is dealing with a suspect who is unstable or suffering from a mental disorder. (Reed Dep. 27). The Memphis CIT program trains officers from various law enforcement agencies around the world. (Shepherd Dep. 20-21). The training has been in place for over 30 years. (Shepherd Dep. 21).

Deputies Reed and Shepherd were both CIT certified on and before the day Edmond Studdard was shot (Reed Dep. 23; Shepherd Dep. 73; Reed and Shepherd's Training Log, Exhibit B; Defendants' Expert Report of Richard Lichten with attached Affidavit of Training Director Kellerhall; Exhibit C), as was Deputy Pair (Pair Dep. 261). Prior to their CIT certifications, Reed was a police officer in Millington, Tennessee. (Reed Dep. 15). He became a Sheriff's Deputy in 2013. (Reed Dep. 34). Reed also received mental health training during in-service with the SCSO and at the SCSO academy. (Reed Dep. 39, 45, 47, Training Log, Ex. B; Defendant's Expert Report Kellerhall Aff., Ex. C).

Shepherd has a Bachelor's degree in criminal justice and a Master's degree in criminology from the University of Memphis. (Shepherd Dep. 14, 24). While she was a graduate assistant, she was assigned to the CIT grant program, which helped facilitate training for CIT officers based on the CIT Memphis model. (Shepherd Dep. 16, 18). Shepherd was hired by the SCSO in 2010 and, like Reed, went to the SCSO training academy. (Shepherd Dep. 30; Training Log, Ex. B; Defendant's Expert Report Kellerhall Aff., Ex. C).

While the SCSO's standard training and CIT training provide tools for deputies to utilize, "[e]very situation is going to be different." (Pair Dep. 72). Reed testified that "armed party" calls are also different, even when the calls are CIT-related. (Reed Dep. 231). The situation always depends on the circumstances and the suspect. (Reed Dep. 232).

SCSO deputies, including Shepherd and Reed, also receive training on firearms, use of force, and defense against suspects with weapons. Shepherd testified that she was trained, when facing a knife-wielding suspect, to rely on a 25-foot guideline. [W]e're not supposed to – we're trained not to let someone in that 25 foot threshold who has a weapon, [whether] it's to their throat, out at us, or anything like that." (Shepherd Dep. 173). SCSO deputies are trained, if forced to fire, to aim center mass. (Reed Dep. 236). And when asked if they shoot to kill, Reed said, "No, no, no, no. We don't shoot to kill. We shoot to end the threat." (Reed Dep. 236).

After reviewing Chief Kellerhall's Affidavit and the depositions of the deputies, Defendants' expert, Mr. Richard Lichten, opined that the SCSO training appears consistent with the appropriate practices in the field. (*See* Defendants' Expert Report of Richard Lichten at 49, Ex. C). Plaintiff's expert does not provide any opinions regarding SCSO training generally or specifically as to Reed or Shepherd.

# ARGUMENT

**Standard of Review**

Rule 56 of the Federal Rules of Civil Procedure requires a court to grant summary judgment where the evidence offered demonstrates "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party in opposition to a motion for summary judgment "may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).

**A.     Municipal Liability**

A municipality may not be held liable under § 1983 on a respondeat superior theory, or "solely because it employs a tortfeasor." *D'Ambrosio v. Marino*, 747 F.3d 378, 388-89 (6th Cir. 2014) (quoting *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691 (1978)). Instead, a municipality is liable under § 1983 only where, "through its deliberate conduct," it is "the moving force behind the injury alleged." *Alman v. Reed*, 703 F.3d 887, 903 (6th Cir. 2013) (internal quotations and citations omitted). " '[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Bd. of the County Comm'rs of Bryan County, Oklahoma v. Brown*, 520 U.S. 397, 410 (1997). Such liability may generally only be imputed via a policy or custom of the municipality, *see Monell*, 436 U.S. at 691, through the acts of an official policymaker, *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1985) (plurality opinion), or in some instances through a failure to train, *City of Canton, Ohio v. Harris*, 489 U.S. 378 (1989). *But see Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 122 (1992) (noting the "separate character of the inquiry into the

question of municipal responsibility and the question whether a constitutional violation occurred.").

Not all actions by government employees rise to the level of a policy, custom, or act by a policymaker. The Sixth Circuit has defined a policy as one that affirmatively commands that a deprivation of constitutional rights occur. *See Highfill v. City of Memphis*, 425 F. App'x. 470, 476 (6th Cir. 2011); *Pembaur*, 475 U.S. at 481. A custom is an act "that has not been formally approved by an appropriate decisionmaker," but that is "so widespread as to have the force of law." *Brown*, 520 U.S. at 404.[2]

Here, contrary to Plaintiff's allegations, a municipality's decision not to issue less-lethal-weapons, such as tasers or bean bag guns, does not establish deliberate indifference. *Estate of Smith v. Silvas*, 414 F. Supp. 2d 1015, 1021-22 (D. Colo. 2006) ("The Estate also alleges that the City's failure to sufficiently deploy less-lethal weapons indicates deliberate indifference . . . [But i]t is not enough for the Estate to simply point to something that the City could have done.") (citing *City of Canton*, 489 U.S. at 391); *Estate of Larsen ex rel. Sturdivan v. Murr*, No. 03 CV 02589 MSK OES, 2006 WL 322602, at *6 (D. Colo. Feb. 10, 2006), *aff'd*, 511 F.3d 1255 (10th Cir. 2008) ("The Court cannot speculate that if Officer Murr had been issued a "less-lethal" weapon, he would have chose to use it in these circumstances. Thus, the Court cannot conclude that the [City's] failure to issue "less-lethal" weapons caused Mr. Larsen's death[.]"); *Samuel v. City of Broken Arrow, Okla.*, No. 10-CV-683-GKF-TLW, 2011 WL 6029677, at *6 (N.D. Okla. Dec. 5, 2011), *aff'd*, 506 F. App'x 751 (10th Cir. 2012) ("In the situation presented here, where Mr. Samuel posed a threat to the officer and to bystanders with deadly edged weapon, the law

---

[2] "Custom" often overlaps with "practice" in a municipal liability analysis. *See Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691 (1978).

did not require Officer Garrett to holster his service weapon and re-engage Mr. Samuel with a taser.").

In order to prove a custom, a plaintiff must show multiple prior instances of the constitutional violation at issue sufficient to put the municipality on notice of the alleged unconstitutional conduct. In other words, a "single alleged bad act is not sufficient to maintain a 'policy or custom' claim against a municipality." *Wells v. City of Dearborn Heights*, No. 10-CV-10543, 2014 WL 234336, at *3 (E.D. Mich. Jan. 22, 2014). A plaintiff must show "(1) a clear and persistent pattern of misconduct, (2) notice or constructive notice on the part of the municipality, (3) the defendant's tacit approval of the misconduct, and (4) a direct causal link to the violations." *Nouri v. Cty. of Oakland*, 615 F. App'x. 291, 296 (6th Cir. 2015) (internal quotation marks omitted). In *Nouri*, the Sixth Circuit noted that it had "never found notice of a pattern of misconduct (or the pattern itself) solely from the mistreatment of the plaintiff." *Id.* at 296. When a plaintiff "has none but his own experience upon which to rely, a sufficient claim against the municipality has not been made." *Epperson v. City of Humboldt, Tenn.*, 140 F. Supp. 3d 676, 685-86 (W.D. Tenn. 2015); *see also Jones v. Muskegon County*, 625 F.3d 935, 946 (6th Cir. 2010) ("Although Plaintiff did present evidence that several inmates' medical requests were ignored by jail personnel . . . a jury could not reasonably infer from these five incidents alone that the County had a widespread, permanent, and well-settled custom of ignoring inmate requests.").

A municipality may also, in some circumstances, be liable under a failure to train theory of liability.[3] But "[t]hat a particular officer may be unsatisfactorily trained will not alone suffice

---

[3] "As with all theories of municipal liability, a "failure to train action requires an underlying constitutional violation." *Graham v. Hodge*, 619 F. App'x 394, 395 (5th Cir. 2015); *see Watkins v. City of Battle Creek*, 273 F.3d 682, 687 (6th Cir. 2001) ("If no constitutional violation by the individual defendants is established, the municipal defendants cannot be held liable under § 1983.").

7

to fasten liability on the city, for the officer's shortcomings may have resulted from factors other than a faulty training program." *Canton*, 489 U.S. at 390-91. A municipality's "culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). To prove such a theory, "the record must show a complete failure to train the police force, training that is so reckless or grossly negligent that future police misconduct is almost inevitable or would properly be characterized as substantially certain to result." *Harvey v. Campbell Cty., Tenn.*, 453 Fed. Appx. 557, 567 (6th Cir. 2011) (citation and internal quotation marks omitted). That is, "if the need for more or different training is so obvious that the [municipality] is shown to have been deliberately indifferent to the need, then the [entity] may be deemed to have had a policy of deliberate indifference." *Connick*, 563 U.S. at 91. However, "mere allegations that an officer was improperly trained or that an injury could have been avoided with better training are insufficient to make out deliberate indifference." *Harvey*, 453 Fed. Appx. at 567. As the Sixth Circuit explained in *Russo v. City of Cincinnati*, 953 F.2d 1036 (6th Cir. 1992), a plaintiff must establish: "(1) that the training program was inadequate for the tasks that officers must perform; (2) that the inadequacy was the result of the city's deliberate indifference; and (3) that the inadequacy was 'closely related to' or 'actually caused the . . . injury.' " *Russo*, 953 F.2d at 1046 (citing *Hill v. McIntyre*, 884 F.2d 271, 275 (6th Cir.1989)).

Here, Plaintiff cannot prevail against Shelby County under any theory of municipal liability. As a threshold matter, Plaintiff cannot show that the individual defendants violated Mr. Studdard's Fourth Amendment rights; thus, there is no underlying constitutional violation. *See* Reed and Shepherd's Motion for Summary Judgment. Beyond that, Plaintiff cannot show that

any constitutional violated was the result of a policy, custom, or failure to train by Shelby County.

As to policies, Shelby County has appropriate policies regarding use of force, firearms, and the handling of mentally ill suspects. (*See* SCSO Policies, Ex. A). Plaintiff can submit no evidence, via expert testimony or otherwise, to show that these policies are unconstitutional on their face, in effect, or are otherwise deficient. *See Glassburn v. Weakley Cty.*, No. 1:12-CV-1107-JDB-EGB, 2013 WL 4039047, at *6 (W.D. Tenn. Aug. 7, 2013) (granting summary judgment where municipality had appropriate policies on use of deadly force and plaintiff provided no "conflicting evidence to support his position that Weakley County failed to establish proper policies and procedures . . . ."). Similarly, as to Plaintiff's claim that Shelby County should have issued tasers or bean bag guns, there is no evidence in the record, nor has Plaintiff submitted any expert testimony, to suggest that such less-lethal weapons are appropriate against knife-wielding suspects in the circumstances presented here, or that the deputies could have (or would have) used them in this case.

As to custom, even if Plaintiff could show that the individual deputies took some action that constituted a violation, Plaintiff cannot show that such a specific action was the latest in a widespread, permanent, and well-settled practice of the kind of constitutional violation alleged here. Specifically, Plaintiff's lawsuit is based on the theory that the deputies did not respond appropriately based on Mr. Studdard's apparent mental illness at the time. Alternatively, the Plaintiff seems to more generally allege that Studdard was simply not a viable threat to the deputies when they fired. Even if that were true (it is not), this was not the most recent in a pattern or practice by Shelby County Sheriff's deputies and there is no evidence to support such a claim. Thus, Plaintiff's theory of municipal liability based on a custom also fails.

Finally, Plaintiff can submit no evidence to show that any constitutional violation that occurred (none did occur) was the result of a failure to train Deputies Shepherd and Reed. As the record makes clear, both deputies received thorough, up-to-date training from the Sheriff's Office Training Academy during basic training. Their training included POST-certified instruction and testing on firearms, use of force, and the handling of mentally ill suspects. And although that, alone, is sufficient for any deputy, Shepherd and Reed were also specially certified as Crisis Intervention Team deputies. Plaintiff can submit no evidence to show that such training was deficient, much less that it was so reckless or grossly negligent that misconduct was almost inevitable. And although Plaintiff has submitted expert proof in this case, Plaintiff's expert does not opine on a failure to train Shepherd or Reed or Shelby County's training in general. (*See* Plaintiff's expert report; *see generally Russo*, 953 F.2d at 1047 ("Especially in the context of a failure to train claim, expert testimony may prove the sole avenue available to plaintiffs to call into question the adequacy of a municipality's training procedures . . . .")). Without more, Plaintiff's failure-to-train theory also fails. As with the other avenues of municipal liability addressed above, there is no genuine issue of material fact here for the jury to decide. Thus, Shelby County should receive summary judgment.

Respectfully submitted,

*/s/ E. Lee Whitwell*
JOHN MARSHALL JONES (#13289)
johnm.jones@shelbycountytn.gov
E. LEE WHITWELL (#33622)
lee.whitwell@shelbycountytn.gov
SHELBY COUNTY ATTORNEY'S OFFICE
160 North Main Street, Suite 950
Memphis, TN 38103
(901) 222-2100
*Attorneys for Defendants*

Certificate of Service

I certify that the foregoing is being filed via the Court's ECF system this 31st day of August, 2018, for service on all persons registered in connection with this case, including:

>Daniel A. Seward, Esq.
>4510 Chickasaw Road
>Memphis, TN  38117


>*/s/ E. Lee Whitwell*