# UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| Deborah S. Hunt<br>Clerk | 100 EAST FIFTH STREET, ROOM 540<br>POTTER STEWART U.S. COURTHOUSE<br>CINCINNATI, OHIO 45202-3988 | Tel. (513) 564-7000<br>www.ca6.uscourts.gov |

Filed: August 12, 2019

Mr. John Marshall Jones
Mr. Emmett Lee Whitwell
Shelby County Attorney
160 N. Main Street, Suite 950
Memphis, TN 38103

Mr. Daniel Alan Seward
4510 Chicksaw Road
Memphis, TN 38117-0000

         Re: Case No. 19-5084, *Angela Studdard v. Shelby County, TN, et al*
             Originating Case No. : 2:17-cv-02517

Dear Counsel,

   The court today announced its decision in the above-styled case.

   Enclosed is a copy of the court's opinion together with the judgment which has been entered in conformity with Rule 36, Federal Rules of Appellate Procedure.

                                      Yours very truly,

                                      Deborah S. Hunt, Clerk

                                      Cathryn Lovely
                                      Deputy Clerk

cc: Mr. Thomas M. Gould

Enclosures

Mandate to issue.

RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 19a0191p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

ANGELA STUDDARD, individually and as lawful wife, next of kin, administrator ad litem, and personal representative for Edmond Studdard, deceased, and Estate of Edmond Studdard,

> *Plaintiff-Appellee,*

v.

SHELBY COUNTY, TENNESSEE, et al.,

> *Defendants,*

ERIN J. SHEPHERD and TERRY I. REED, individually and as employees or agents of Shelby County, Tennessee,

> *Defendants-Appellants.*

No. 19-5084

Appeal from the United States District Court
for the Western District of Tennessee at Memphis.
No. 2:17-cv-02517—Jon Phipps McCalla, District Judge.

Argued: August 6, 2019

Decided and Filed: August 12, 2019

Before: SUTTON, GRIFFIN, and READLER, Circuit Judges.

_____

## COUNSEL

**ARGUED:** E. Lee Whitwell, SHELBY COUNTY ATTORNEY'S OFFICE, Memphis, Tennessee, for Appellants. Daniel A. Seward, SEWARD LAW FIRM, Memphis, Tennessee, for Appellee. **ON BRIEF:** E. Lee Whitwell, John Marshall Jones, SHELBY COUNTY ATTORNEY'S OFFICE, Memphis, Tennessee, for Appellants. Daniel A. Seward, SEWARD LAW FIRM, Memphis, Tennessee, for Appellee.

# OPINION

SUTTON, Circuit Judge. May police officers shoot an uncooperative individual when he presents an immediate risk to himself but not to others? No, case law makes clear. We thus affirm the district court's decision to deny the officers' motion for summary judgment based on qualified immunity.

I.

Three scenes capture what happened. Each one gives the benefit of the doubt to the plaintiff's presentation of the evidence.

Scene one. Just outside of Memphis on a hot July day in 2016, Officer Kyle Lane, a deputy in Shelby County, Tennessee, responded to a hit-and-run dispatch call. After he arrived at the accident site, several people told Lane that he should follow Edmond Studdard, who was walking away along the road. One of the bystanders told Officer Lane that Studdard had slit his wrists and needed attention. Concerned, Lane turned his patrol motorcycle around and rode after Studdard.

Scene two. Lane rode a short way down the road, saw Studdard, and pulled up next to him. He asked Studdard to stop and talk with him. Studdard ignored Lane's request and responded to further inquiry by turning toward Lane and displaying what appeared to be a knife. At that point, Lane noticed Studdard's bloody wrists.

Lane continued to follow Studdard, who intermittently walked and ran along the northbound side of the street. Before engaging Studdard again, Lane decided that he needed support. Lane sent out a call for backup, noting that Studdard had a knife and had slit his wrists. Three officers responded.

Deputies Samuel Pair and Erin Shepherd, on duty together that day, arrived at about the same time as Deputy Terry Reed. They parked their two vehicles north of Studdard, seeking to block traffic and his path forward, while Lane continued to follow from the south.

Scene three. The three newly arrived officers exited their vehicles and pulled out their firearms. Studdard halted his northbound journey, taking up a spot in a grassy area on the east side of the street. A bush stood to Studdard's north, while a fence blocked him to the east. Lane (now off his motorcycle and with his gun trained on Studdard) stood to the south, and the three other officers stood to Studdard's west in the southbound lane of the road. Studdard faced the officers to the west, about 34 feet away.

All four officers directed Studdard to drop the knife. Studdard stood still, knife in hand. One of the officers said that they would shoot if Studdard did not drop the weapon. Studdard raised the knife up to his throat and began moving forward in a "swaying" motion. R. 96-4 at 52–53. "Almost immediately," Deputies Reed and Shepherd opened fire from the southbound lane. R. 96-2 at 17. Reed shot twice, Shepherd three times. Studdard, still in the grassy area, fell. Lane called for an ambulance. Reed kicked the knife out of Studdard's hand, and all four officers began administering aid. Studdard died in the hospital several weeks later due to complications from the gunshot wounds.

Angela Studdard, his wife, filed this § 1983 action, alleging that Officers Reed and Shepherd used excessive force in violation of the Fourth Amendment. The officers moved for summary judgment based on qualified immunity. The district court denied their motion.

II.

The ground rules for resolving this appeal are straightforward. Qualified immunity shields officers from personal liability unless they violate an individual's clearly established constitutional rights. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). A seizure becomes unreasonable under the Fourth Amendment if the officer uses excessive force. *Graham v. Connor*, 490 U.S. 386, 394–95 (1989). To justify lethal force, an officer must have probable cause to believe the suspect presents an immediate threat of serious physical harm to the officer or others. *Tennessee v. Garner*, 471 U.S. 1, 11 (1985). In view of the many settings in which officers may use force against an uncooperative suspect, we must carefully define the right in determining whether the officers may be held liable. *Kisela v. Hughes*, 138 S. Ct. 1148, 1152–53 (2018) (per curiam). The facts of another case need not be identical, but they must be similar

enough that the other case "squarely governs" this one. *Id.* at 1153 (quotation omitted). In deciding what the facts are at summary judgment, we construe the record evidence in favor of the non-movant—here Studdard. *Sims Buick-GMC Truck, Inc. v. Gen. Motors LLC*, 876 F.3d 182, 185 (6th Cir. 2017). All things considered, we construe uncertain facts in Studdard's favor and uncertain law in the officers' favor.

Gauged by these standards, we think the district court correctly denied the officers' bid for qualified immunity.

As a general matter, the officers' actions violated clearly established requirements in this area. When Officers Reed and Shepherd confronted Studdard, it's true, they had good reason to believe he was dangerous and uncooperative. They knew or reasonably believed that Studdard had a knife and that he had slit his wrists. And he refused to comply with their commands to put the knife down. But Studdard at this point did not pose a serious risk to anyone in the area. No bystander was remotely near him. And Officers Reed and Shepherd, in the southbound lane of the road, stood about 34 feet from Studdard, in the grassy area east of the road. He made no verbal threats to them or anyone else at the time. What he did do was raise the knife to his throat when the officers warned that they would use force if he did not put the knife down. And when he raised the knife to his throat, he moved forward in a swaying motion. These actions did not justify lethal force.

As a specific matter, the officers' actions violated *Sova v. City of Mt. Pleasant*, 142 F.3d 898 (6th Cir. 1998). Officers faced a knife-wielding man who had gashed his arms and chest. From inside his parents' home, he told the police to go away. The officers entered a screened porch off the kitchen of the house and asked the man what he wanted. He replied that he wanted the police to shoot him. When the man moved toward the door to the porch, the officers yelled at him to drop the knife. He did not comply and instead stepped out on the porch. One officer sprayed the man with mace, forcing him back inside the house. But the man walked back to the door. When he pushed the screen door open, but while he still stood in the doorframe, the officers fired. *Id.* at 900–01, 902. On those facts, we held, a reasonable jury could find that the officers used excessive force.

The two cases warrant the same outcome. Both cases involved men with knives who had cut themselves—and threatened worse to themselves. In each case, the suspects ignored commands to drop their knives. And in each case, the suspects made similar movements toward the officers just before being shot—one swaying forward from 34 feet away, one opening the screen door onto the porch where the officers stood. *Sova* indeed seems to be the harder case, as the officers were closer to the suspect and more at risk. That means Studdard's claim deserves resolution by a jury too.

The officers push back in several ways.

They start by taking issue with the facts. Even viewing the evidence in Studdard's favor, they say, it reasonably supports only the conclusion that Studdard began walking toward Deputies Reed and Shepherd before they shot him. The district court rightly disagreed. Reed and Shepherd, it's true, said that Studdard walked toward them before they fired. But Deputy Lane said he did not see Studdard walk toward them. Lane said Studdard moved his upper body forward, in a swaying motion, but that he never saw Studdard advance toward the officers.

While Lane admits that he focused on the knife at Studdard's throat instead of whether Studdard moved his feet, other evidence supports Lane's view that Studdard merely swayed. Lane had a clear view of the entire incident, which means he likely would have noticed if Studdard walked several feet toward the officers (as they testified), even with his focus centered on the knife. Lane also said the officers shot "[a]lmost immediately" after Studdard raised the knife to his neck, R. 96-2 at 17, which supports an inference that not enough time elapsed for Studdard to walk forward. And Shepherd testified that Studdard stood near the middle of the 19-foot-wide grassy area before raising the knife to his neck and beginning to move. Studdard fell upon being shot, and no officers said they moved him while administering aid. The paramedic found Studdard 10 feet from the curb, in the middle of the grassy area. That suggests, again, that Studdard didn't walk before the officers shot. At this stage, we must assume Studdard swayed forward but never walked toward the officers.

The officers try to separate *Sova* from this case. They note that the interaction there lasted much longer than the interaction in this case. That's true. But it doesn't change matters.

The man in *Sova*, who had clearly heard and responded to the officers, ignored their commands once by coming onto the porch. And, despite being sprayed with mace the first time, he began to approach again. The history here, while not as long, provided no more cause for concern. The officers add that the man in *Sova* never walked forward through the door. True again. But Studdard also did not walk forward. The man in *Sova* moved his arm forward to open the door; Studdard swayed forward. Any distinction between the two cases is not a meaningful one. If anything, the man's action of pushing the screen door open in *Sova* seems like a more purposeful move toward the officers, making this the easier case.

The officers also invoke *Stevens-Rucker v. City of Columbus*, which granted officers qualified immunity for using lethal force against a knife-wielding suspect. 739 F. App'x 834 (6th Cir. 2018). After the suspect in that case twice recovered from being tased, an officer shot him as he ran at them. *Id.* at 837, 842. There is a world of difference between a knife-wielding suspect who runs at officers and one who doesn't. A different officer, after chasing the suspect through an apartment complex in the dark, shot him again upon confronting him in an open space. That officer fired four quick shots, two of which hit the suspect after he had fallen down but while he pushed himself back off the ground. *Id.* at 843–44. Studdard didn't present the same kind of perilous defiance, and the officers had better control over the surroundings here.

We affirm.

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

No. 19-5084

ANGELA STUDDARD, individually and as lawful wife,
next of kin, administrator ad litem, and personal representative
for Edmond Studdard, deceased, and Estate of Edmond Studdard,

    Plaintiff - Appellee,

v.

SHELBY COUNTY, TENNESSEE, et al.,

    Defendants,

ERIN J. SHEPHERD and TERRY I. REED,
individually and as employees or agents of Shelby County, Tennessee,

    Defendants - Appellants.

```
                    FILED
                 Aug 12, 2019
              DEBORAH S. HUNT, Clerk
```

Before: SUTTON, GRIFFIN, and READLER, Circuit Judges.

# JUDGMENT

On Appeal from the United States District Court
for the Western District of Tennessee at Memphis.

THIS CAUSE was heard on the record from the district court and was argued by counsel.

IN CONSIDERATION THEREOF, it is ORDERED that the judgment of the district court is AFFIRMED.

**ENTERED BY ORDER OF THE COURT**

Deborah S. Hunt, Clerk